**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| OPP LIQUIDATING COMPANY, INC. | ) | Case No. 19-10729 (MFW) |
| (f/k/a Orchids Paper Products | ) | |
| Company), et al., | ) | Jointly Administered |
| | ) | |
| Debtors. | ) | |
| | ) | |
| BUCHWALD CAPITAL ADVISORS LLC, | ) | |
| As Liquidating Trustee of the | ) | |
| Orchids Paper Products | ) | |
| Liquidating Trust, | ) | |
| | ) | Adv. Proc. No. 21-50431 (MFW) |
| Plaintiffs, | ) | |
| | ) | Rel. Docs.  17, 18, 19, 21, |
| v. | ) | 26, 27, 29 & 30 |
| | ) | |
| JEFFREY S. SCHOEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION[1]

Before the Court are two motions to dismiss ("the Motions to Dismiss") claims for breach of fiduciary duties, aiding and abetting breach of fiduciary duties, and avoidance of fraudulent transfers under federal and state law.  For the reasons stated below, the Motions to Dismiss will be granted in part and denied in part.

---

[1]   The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.  Instead, the facts recited are those averred in the Amended Complaint, which must be accepted as true for the purposes of these Motions to Dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

I.  PROCEDURAL BACKGROUND

OPP Liquidating Company, Inc. (the "Debtor") was formed in
1998.  The Debtor was a public company that operated as a low-
cost, value manufacturer of tissue products serving "extreme
value" retail establishments such as Dollar General and Family
Dollar.[2]  After expansion efforts failed and its financial
condition deteriorated, the Debtor, and its affiliates, filed for
relief under chapter 11 of the Bankruptcy Code on April 1, 2019
(the "Petition Date").  On February 24, 2020, the Court confirmed
the Debtors' Combined Disclosure Statement and Chapter 11 Plan
(the "Plan").[3]  Under the Plan, a creditors' Trust was
established, to which was assigned various causes of action
belonging to the estate, and Buchwald Capital Advisors LLC, was
named as Liquidating Trustee (the "Liquidating Trustee").

On May 4, 2021, the Liquidating Trustee commenced an
adversary proceeding against the Debtor's former Chief Financial
Officers — Keith Schroeder, Rodney D. Gloss, and Mindy Bartel
(collectively, the "Former CFO Defendants"), the Debtor's former
Chief Executive Officer, Jeffrey S. Schoen ("Schoen"),[4] and

---

[2]    Adv. D.I. 17 ¶ 22.  References to the docket in this
adversary proceeding are to "Adv. D.I. #" while references to the
docket in the main case are to "D.I. #."

[3]    D.I. 714.

[4]    From 2007 to the Petition Date, Schoen was a member of the
Debtor's BOD; beginning in 2013, Schoen was CEO.  At all times
relevant to the Amended Complaint, Schoen and the CFO Defendants
were officers of the Debtor (the "Officer Defendants").

members of the Debtor's Board of Directors ("BOD") — Steven R. Berlin, John C. Guttilla, Douglas E. Hailey, Elaine MacDonald, and Mark Ravich (the "BOD Defendants").

On August 13, 2021, the CEO and BOD Defendants and, separately, the Former CFO Defendants filed the Motions to Dismiss the Liquidating Trustee's First Amended Complaint (the "Amended Complaint") in its entirety for failure to state a claim under Rule 12(b)(6).[5]  On September 24, 2021, the Liquidating Trustee filed responses to the Motions to Dismiss.[6]  The Defendants filed replies on October 15, 2021.[7]  The Motions are ripe for decision.

II.  <u>FACTUAL ALLEGATIONS</u>

The Liquidating Trustee's Amended Complaint asserts claims for breach of fiduciary duties against Schoen and the former CFO Defendants (Count I), breach of fiduciary duties against the BOD Defendants (Count II), aiding and abetting the breach of fiduciary duties against the BOD Defendants (Count III), and avoidance of fraudulent transfers under federal and state law against all Defendants (Count IV).  Those claims are premised on pre-petition activities related to the Debtor's expansion plans

---

[5]     Adv. D.I. 18, 19.

[6]     <u>Id.</u> 26, 27.

[7]     <u>Id.</u> 29, 30.

on the East and West Coasts, the Debtor's internal operations,
and the Debtor's payment of compensation, stipends, and other
benefits to the Defendants.

In essence, the Amended Complaint contends that Schoen
pushed the BOD to approve a simultaneous, ill-advised, and poorly
implemented expansion on the East and West Coasts.  It alleges
that the BOD Defendants did not adequately inform themselves of
the advisability of those plans and allowed Schoen free rein
instead of fulfilling their fiduciary role.  As a result, the
Debtor exceeded the expansion budget by more than $50 million,
was unable to operate any of its three plants efficiently,
incurred significant operational losses, violated the covenants
of its loans, and ultimately was forced to file bankruptcy.  In
addition, the Debtor experienced substantial turnover of its CFO,
who failed to maintain accurate records or to restate financial
statements when it became apparent they were inaccurate.
Notwithstanding those problems and the breach of their fiduciary
duties by the Defendants, the Amended Complaint alleges that the
Debtor continued to make substantial payments to the Defendants,
for which it did not receive equivalent value.


III. <u>JURISDICTION</u>

The Court has subject matter jurisdiction over this
adversary proceeding.[8]  This action involves both core and non-

---

[8]    28 U.S.C. § 1334(b).

core claims.[9]  The fraudulent transfer claims are core claims, as they rely on sections 544 and 548 of the Bankruptcy Code.[10]  The fiduciary duty claims are non-core "related to" claims, as they are claims arising under state law, not arising "in" or "under" the Bankruptcy Code.  The Defendants have consented to entry of a final order or judgment by the Court on the Motions to Dismiss.[11]

IV.  DISCUSSION

    A.  Standard of Review

        1.  Rule 12(b)(6)[12]

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted."[13]  Rule 12(b)(6) is

---

[9]  Id. § 157(b)(2).

[10]  Id. at § 157(b)(2)(H); 11 U.S.C. §§ 544(b) & 548.  The Liquidating Trustee invokes its power under section 544 to assert claims under the Uniform Fraudulent Transfer Act (the "UFTA").  Under section 157(b)(2)(H), these claims are core, as they seek to "determine, avoid, or recover fraudulent conveyances."  See also Maxus Liquidating Trust v. YPF S.A. (In re Maxus Energy Corp.), 597 B.R. 235, 243 (Bankr. D. Del. 2019) (holding that section 544 claims are core because "though state law supplies the substance of the claim, the power to bring the claim in the first place arises under federal law.").

[11]  Adv. D.I. 13, 18, 20.

[12]  Rule 12(b)(6) of the Federal Rules of Civil Procedure is incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  Similarly, Rules 8 and 9 of the Federal Rules of Civil Procedure are incorporated by the Federal Rules of Bankruptcy Procedure.  Therefore, citations herein are to the Federal Rules of Civil Procedure.

[13]  Fed. R. Civ. P. 12(b)(6).

related to Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14]  When a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the complaint "does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15]  Two "working principles" underlie this pleading standard:

> First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.  Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense.[16]

Under this standard, a complaint must nudge claims "across the line from conceivable to plausible."[17]  The movant carries the burden of showing that dismissal is appropriate.[18]

Interpreting this pleading standard, the Third Circuit instructs courts to follow a three-part analysis.  "First, the

---

[14]    Id. 8(a)(2).

[15]    Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[16]    Iqbal, 556 U.S. at 663-64 (citation omitted).

[17]    Twombly, 550 U.S. at 570.

[18]    Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.), 496 F. Supp. 2d 404, 408 (D. Del. 2007).

court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"[19]  Second, the court must separate the factual and legal elements of the claim, accepting all of the complaint's well-pleaded facts as true and disregarding any legal conclusions.[20]  Third, the court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.[21]  After conducting this analysis, the court may conclude that a claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.[22]

      2.  <u>Rule 9(b)</u>

In addition, there is a heightened pleading standard for allegations of fraud, including actions to avoid fraudulent transfers.[23]  Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with
> particularity the circumstances constituting fraud or
> mistake.  Malice, intent, knowledge, and other
> conditions of a person's mind may be alleged generally.[24]

---

[19]  <u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 556 U.S. at 675).

[20]  <u>Santiago</u>, 629 F.3d at 130.  <u>See also</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing <u>Iqbal</u>, 556 U.S. at 679).

[21]  <u>Santiago</u>, 629 F.3d at 130.

[22]  <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

[23]  <u>Pa. Emp. Benefit Tr. Fund v. Zeneca, Inc.</u>, 710 F. Supp. 2d 458, 478 (D. Del. 2010).

[24]  Fed. R. Civ. P. 9(b).

Rule 9(b) requires that plaintiffs plead the "who, what, where, when, how, and why" of a fraudulent transfer claim.[25]  The Third Circuit has stated that the purpose of Rule 9(b) is to "place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior."[26]

Rule 9's "requirements . . . are relaxed in the bankruptcy context, particularly in cases . . . in which a trustee has been appointed" because generally the trustee is an outsider without access to the facts necessary to articulate the details of a fraud.[27]

### B.   Breach of Fiduciary Duty Counts

The Defendants seek to dismiss Counts I and II of the Amended Complaint which allege that the Defendants breached their fiduciary duties of care and loyalty.  The Defendants argue that the Liquidating Trustee fails to state a claim for breach of

---

[25]   See Gerbitz v. ING Bank, FSB, 967 F. Supp. 2d 1072, 1078 (D. Del. 2013).  But see Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984) ("Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.").

[26]   Seville Indus., 742 F.2d at 791.

[27]   Zazzali v. Mott (In re DBSI, Inc.), 445 B.R. 344, 347–48 (Bankr. D. Del. 2011).  "Greater liberality is afforded in pleading fraud in the bankruptcy setting because it is often a trustee, a third party outsider to the transaction, who must plead fraud based on secondhand knowledge for the benefit of the estate and its creditors."  Joseph v. Frank (In re Troll Commc'ns, LLC), 385 B.R. 110, 124 (Bankr. D. Del. 2008) (citation omitted).

fiduciary duty against them for multiple reasons.

    1.   Statute of Limitations

The Defendants initially contend that the fiduciary duty claims asserted in the Amended Complaint are barred by the applicable statute of limitations.  Under Delaware law, claims for breach of fiduciary duty are subject to a three-year statute of limitations.[28]  The Defendants assert that the Liquidating Trustee's claims are premised on events that occurred before April 1, 2016, which is more than three years before the Amended Complaint was filed.  Even if the statute of limitations were tolled by the filing of the bankruptcy case under section 108, the Defendants contend that the claims are barred because the events in question were more than three years before the Petition Date.[29]

The Liquidating Trustee contends, however, that the statute of limitations has been tolled under Delaware law, which provides three bases for tolling: (1) inherently unknowable injuries, (2)

---

[28]   10 Del. C. § 8106.  See also Miller v. Bradley (In re W.J. Bradley Mortg. Capital, LLC), 598 B.R. 150, 167 (Bankr. D. Del. 2019); Eugenis VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors, LLC), 524 B.R. 62, 80-81 (Bankr. D. Del. 2015).  The limitations period begins to run from the date of the alleged harm.  W.J. Bradley, 598 B.R. at 167.  "Alleged harm means 'the moment [] the wrongful act [accrues] — not when the harmful effects are felt — even if the plaintiff is unaware of the wrong.'"  Id. (quoting Carr v. New Enter. Assocs., Inc., No. CV 2017-0381-AGB, 2018 WL 1472336, at *8 (Del. Ch. Mar. 26, 2018) (citation omitted)).

[29]   Under the Bankruptcy Code, statutes of limitations that have not expired by the petition date are automatically tolled until the later of the end of such period or two years after the petition date.  11 U.S.C. § 108(a).

equitable tolling, and (3) fraudulent concealment.[30]  Because the
Amended Complaint on its face asserts claims outside the statute
of limitations, the Liquidating Trustee bears the burden of
pleading facts to support the tolling exception.[31]  The Liquidating
Trustee relies principally on the third basis, asserting that the
Defendants fraudulently concealed the relevant facts.[32]

      a.   <u>Schoen</u>

The Liquidating Trustee argues that fraudulent concealment is
properly alleged in the Amended Complaint as to Schoen.
Specifically, the Amended Complaint alleges that, between 2014 and
2017, Schoen had a fiduciary duty to disclose information
regarding the full details and risks of the expansion plan (and
its disastrous implementation) to the BOD but failed to do so.
This, the Liquidating Trustee contends, constitutes fraudulent

---

[30]   <u>W.J. Bradley</u>, 598 B.R. at 168.

[31]   <u>Winklevoss Capital Fund, LLC v. Shaw</u>, No. CV 2018-0398-JRS,
2019 WL 994534, at *6 (Del. Ch. Mar. 1, 2019) (citations omitted)
(holding that if the complaint asserts a cause of action which on
its face accrued outside the statute of limitations, the
plaintiff has the burden to plead facts "leading to a reasonable
inference that one of the tolling doctrines adopted by Delaware
courts applies").

[32]   Although it mentions all three bases, the Liquidating
Trustee does not make any specific arguments that the statute of
limitations is tolled because of inherently unknowable injuries
or equitable reasons.  Therefore, the Court cannot conclude that
the Liquidating Trustee has met its burden of establishing that
the statute of limitations has been tolled on either of those
bases.

concealment sufficient to toll the statute of limitations.[33]

In their response, the Defendants present two arguments against the Liquidating Trustee's tolling argument.

### i.  Affirmative Act

First, the Defendants state that the Amended Complaint must allege an affirmative act of concealment.[34]  The Defendants claim that the only affirmative act of concealment alleged in the Amended Complaint was that Schoen's ultimate goal was to sell the company.[35]  They contend that for the Liquidating Trustee to invoke the fraudulent concealment tolling exception against Schoen, the Court must plausibly infer from the allegations of the Amended Complaint that: (1) Schoen had the goal of selling the company; (2) Schoen intentionally misrepresented or concealed that goal; and (3) Schoen's goal was so material that his failure to disclose

---

[33]    End of the Road Trust ex rel. Fruehauf Trailer Corp. v. Terex Corp. (In re Fruehauf Trailer Corp.), 250 B.R. 168, 186 (D. Del. 2000) (holding that fraudulent concealment may be stated by alleging a business fiduciary relationship between defendants and plaintiffs, including a duty to disclose, which defendants breached) (citation omitted).

[34]    See Bridgeport Holdings Inc. Liquidating Trust v. Boyer (In re Bridgeport Holdings, Inc.), 388 B.R. 548, 563 (Bankr. D. Del. 2008) ("Under the doctrine of fraudulent concealment, the plaintiff must prove, 'an affirmative act of concealment by the defendant — an "actual act of artifice" that prevents a plaintiff from gaining knowledge of the facts or some misrepresentation that is intended to put the plaintiff off the trail of inquiry.'") (quoting Fruehauf, 250 B.R. at 186).

[35]    Adv. D.I. 17 ¶¶ 28–33.

11

it constituted an "actual act of artifice."[36]  The Defendants argue that there is not a single allegation in the Amended Complaint that suggests that in 2014 and 2015 Schoen had the goal of selling the company.  Therefore, they contend that there is no sufficient allegation of an affirmative act of concealment.

In response, the Liquidating Trustee contends that the Amended Complaint does allege that Schoen misrepresented the reason for the recommended expansion.  In addition, the Liquidating Trustee notes that the Amended Complaint alleges that, regardless of his goal, Schoen intentionally withheld from the BOD material information necessary for its decision-making.[37]

The Court finds the allegations of the Amended Complaint sufficient to meet the fraudulent concealment exception as to Schoen.  To properly invoke fraudulent concealment, the Liquidating Trustee must show either "[1] the commission of affirmative acts of misrepresentation or [2] failure to disclose facts when there is duty to disclose."[38]  "Under the second prong, fraudulent concealment may be established absent any affirmative act, by alleging a business fiduciary relationship between

---

[36]   Bridgeport, 388 B.R. at 563.

[37]   Adv. D.I. 17 ¶¶ 36-40, 43-46, 148, 152-53.

[38]   Fruehauf, 250 B.R. at 186 (quoting Litman v. Prudential-Bache Prop., Inc., No. CIV.A. 12137, 1994 WL 30529, at *4 (Del. Ch. Jan. 14, 1994)).

Defendants and Plaintiffs and a duty to disclose."[39]  As the CEO,
Schoen had a fiduciary duty to disclose to the BOD relevant facts
necessary for its decision-making.[40]  The Court finds that the
Amended Complaint does allege that Schoen failed to disclose
specific material facts to the BOD in contravention of that duty.[41]

## ii.  Particularity

The Defendants also contend that the Liquidating Trustee
failed to plead fraudulent concealment with the requisite
particularity.[42]  The Defendants argue that the Amended Complaint
does not meet this standard because it does not plausibly support
an inference that Schoen intended to defraud the BOD by concealing
his goal of ultimately selling the company.  The Defendants assert
that there is no allegation that Schoen stood to receive any
personal benefit from a company sale — particularly to a
competitor which would be unlikely to retain Schoen as CEO.  Thus,
the Defendants assert that the Amended Complaint lacks the

---

[39]   Fruehauf, 250 B.R. at 186.

[40]   Id. at 186-87.  See also Hampshire Grp., Ltd. v. Kuttner,
No. 3607-VCS, 2010 WL 2739995, at *13 (Del. Ch. July 12, 2010)
(noting that "officers also have other contextual obligations as
fiduciaries.  These include the responsibility to disclose to
their superior officer or principal 'material information
relevant to the affairs of the agency entrusted to them.'")
(quoting Science Accessories Corp. v. Summagraphics Corp., 425
A.2d 957, 962 (Del. 1980)).

[41]   Adv. D.I. 17 ¶¶ 3, 29-33, 95-101, 109, 112, 119-22, 167.

[42]   Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626-27 (3d
Cir. 1984);  Ocimum Biosolutions (India) Ltd. v. LG Corp., No. CV
19-2227 (MN), 2021 WL 931094, at *6 (D. Del. Mar. 11, 2021).

particularity necessary to plead fraudulent concealment.

As noted above, while a plaintiff must generally plead fraud with specificity under Rule 9, that rule makes an exception for matters that are often hard to prove directly, such as a party's intent.[43]  Furthermore, the requirements for pleading fraud are relaxed for trustees in the bankruptcy context, including liquidating trustees.[44]  In the Amended Complaint, the Liquidating Trustee does have detailed allegations of specific material facts that Schoen withheld from the BOD relating to the reasons for, and the implementation of, the expansion.[45]  Therefore, the Court concludes that the Liquidating Trustee has met the burden of pleading fraudulent concealment sufficient to toll the statute of limitations as to Schoen.

b.  CFO Defendants

The Liquidating Trustee also argues that the statute of limitations should be tolled as to the CFO Defendants because of their fraudulent concealment of relevant facts about activities of the Debtor.  It relies, in part, on the Amended Complaint's allegations that the CFO Defendants made false statements to the Debtor's lenders (the "Lenders") to obtain draws on the Debtor's credit facility.[46]

---

[43]   Fed. R. Civ. P. 9(b) (malice, intent, knowledge, and other conditions of a person's mind may be alleged generally).

[44]   See DBSI, 445 B.R. at 347–48.

[45]   Adv. D.I. 17 ¶¶ 27–33, 42–46, 49–52, 167.

[46]   Id. ¶ 129.

In response, the CFO Defendants contend that the tolling exceptions to the statute of limitations do not apply if the defendant "allegedly conceals facts from a third party."[47]  Thus, they maintain that the Liquidating Trustee's argument against them for fraudulently misrepresenting the financial condition of the Debtor to the Lenders, or failing to correct prior misrepresentations to the Lenders, does not support a tolling of the statute of limitations.  They contend that any claim for those false misrepresentations would have to be asserted by the Lenders, not the Debtor.[48]

The Liquidating Trustee counters that the CFO Defendants had a fiduciary duty to maintain accurate financial records of the Debtor and to provide the BOD with accurate financial information reflecting the true costs of expansion and the financial ramifications of the implementation of the expansion.[49]  The Liquidating Trustee contends that the Amended Complaint alleges that the CFO Defendants failed to fulfill their duty to disclose such accurate financial information to the BOD.[50]  The Liquidating Trustee asserts that these allegations establish fraudulent concealment sufficient to toll the statute of limitations.

---

[47]    Bridgeport, 388 B.R. at 563.

[48]    Id.

[49]    Albert v. Alex. Brown Mgmt. Serv., Inc., No. CIV.A. 762-N, 2005 WL 1594085, at *16 (Del. Ch. June 29, 2005).

[50]    Adv. D.I. 17 ¶¶ 59-60, 63, 68-69, 72, 74.

The Court agrees with the Defendants that the fraudulent tolling exception does not apply if the defendant allegedly conceals facts from a third party.[51]  Therefore, the Liquidating Trustee's allegations that the CFO Defendants fraudulently concealed facts from the Lenders does not toll the statute of limitations.  However, the Court finds that the Amended Complaint does contain numerous allegations of concealment of material financial data by the CFO Defendants from the BOD.[52]  The Court concludes that these are sufficient to support the Trustee's contention of fraudulent concealment supportive of a tolling of the statute of limitations against the CFO Defendants.

Consequently, the Court concludes that, taking the allegations of the Amended Complaint as true, as the Court must at this stage, the claims of the Liquidating Trustee would not be time-barred.[53]  As a result, the Court will deny the Defendants' Motions to Dismiss the fiduciary duty claims on the basis of the statute of limitations.

2.  <u>Duty of Care</u>

The Defendants assert that the Liquidating Trustee fails to

---

[51]  <u>Bridgeport</u>, 388 B.R. at 563.

[52]  Adv. D.I. 17 ¶¶ 59-60, 63, 68-69, 72, 74.

[53]  The Defendants did not raise any counter arguments relating to fraudulent concealment with respect to the BOD Defendants.  However, many of the allegations of the Amended Complaint against the BOD relate to actions which began in 2016 and continued through the Petition Date.  Adv. D.I. 17 ¶¶ 27-33, 42-45.

state a claim for breach of their duty of care for many reasons.

a.    Business Judgment Rule

The Defendants initially argue that the Court must dismiss these claims because the Liquidating Trustee fails to plead how their actions violated the business judgment rule.  "The business judgment rule is a 'powerful presumption in favor of actions taken by the directors in that a decision made by a loyal and informed board will not be overturned by the courts' unless there is no rational business purpose."[54]  The Defendants assert that the Liquidating Trustee has to plead sufficient facts to show why that presumption is not applicable to their actions.

The Liquidating Trustee responds that the business judgment rule is an affirmative defense and should not be considered at the motion to dismiss juncture.[55]  The Liquidating Trustee contends that, because the Amended Complaint does not raise the business judgment rule, it should not be considered now.

The Court agrees with the Liquidating Trustee that the

---

[54]    W.J. Bradley, 598 B.R. at 163 (quoting Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993)).  Under the Delaware business judgment rule, there is a presumption "that 'in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company.'" In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 52 (Del. 2006) (Walt Disney II), aff'g, 907 A.2d 693 (Del. Ch. 2005) (Walt Disney I)) (citation omitted).  See also Liquidation Trust of Solutions Liquidation LLC v. Stienes (In re Solutions Liquidation LLC), 608 B.R. 384, 402 (Bankr. D. Del. 2019).

[55]    W.J. Bradley, 598 B.R. at 163.

business judgment rule is an affirmative defense and should not be considered at the motion to dismiss stage.[56]  Only if the complaint raises the business judgment rule on its face will courts consider its applicability at the motion to dismiss stage.[57]  Here, the Amended Complaint does not raise the business judgment rule on its face, and therefore, the Court will not consider it at this stage.

b.  <u>Gross Negligence</u>

The Defendants also argue that the Amended Complaint fails to allege that they acted grossly negligent, which is the standard for breach of the fiduciary duty of care.[58]  The Defendants further assert that the Amended Complaint is deficient because it relies on many conclusory statements and uses "group" pleading.[59]  For

---

[56]  <u>Id.</u>

[57]  <u>Stanziale v. Nachtomi (In re Tower Air, Inc.)</u>, 416 F.3d 229, 238 (3d Cir. 2005).  <u>See also</u> <u>Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford</u>, 554 F. Supp. 2d 538, 556–57 (D. Del. 2008) (stating that implicitly invoking the business judgment rule is insufficient; the rule must be explicitly raised in the complaint); <u>W.J. Bradley</u>, 598 B.R. at 163; <u>Stanziale v. Versa Capital Mgmt., LLC (In re Simplexity, LLC)</u>, Adv. Pro. No. 16-50212 (KG), 2017 WL 65069, at *8 (Bankr. D. Del. Jan. 5, 2017) (concluding that because trustee did not raise the business judgment rule in his complaint, the defendants could not raise it in their motions to dismiss).

[58]  <u>Walt Disney I</u>, 907 A.2d at 750 (noting that "duty of care violations are actionable only if the directors acted with gross negligence.").  <u>See also</u> <u>W.J. Bradley</u>, 598 B.R. at 163; <u>Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners, L.P. (In re Fedders N. Am., Inc.)</u>, 405 B.R. 527, 539 (Bankr. D. Del. 2009).

[59]  <u>See</u> <u>Solutions</u>, 608 B.R. at 402 (stating that the lack of factual support for the conclusory statements in the complaint meant they were insufficient to state a claim for breach of the duty of loyalty).

example, the Defendants contend that the Amended Complaint merely alleges that the financial records of the Debtor were fraught with problems and largely unreliable, without identifying a single example of an error in the Debtor's financial statements that would render them unreliable.[60]  Similarly, they assert that the Amended Complaint does not identify any of the individual Defendants' specific duties or failings.  Thus, the Defendants argue, the allegations do not rise to the level of gross negligence by any of them sufficient to constitute a violation of their duty of care.

The Liquidating Trustee responds that the Amended Complaint does state a claim against the Defendants for failure to exercise their fiduciary duty of care.  It points to the allegations that the Defendants made numerous decisions regarding operations and the expansion (i) without properly informing themselves of the facts or conducting the proper due diligence, (ii) without retaining expert advisors, and (iii) after holding only a single board meeting, where the management made a hasty presentation.[61] These actions, it asserts, are the quintessential example of gross negligence giving rise to a breach of the duty of care.[62]  In

---

[60]    Adv. D.I. 17 ¶ 3.

[61]    Id. ¶¶ 31, 37-38, 43-46, 53, 93, 137, 140, 142, 146, 148-58, 167, 174.

[62]    See Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168, 194 (Del. Ch. 2006) (giving as an example of what might constitute gross negligence: "a board undertook a major

addition, the Liquidating Trustee contends that the Amended Complaint does not employ "group" pleading, noting that it specifies dates and roles, thus identifying who was responsible for any actions or inactions during the relevant time period.[63]

The Defendants counter that they were informed, did conduct due diligence, had multiple board meetings, and viewed lots of presentations and documents before making decisions.[64]  At the motion to dismiss stage, however, the Court must accept the allegations in the Amended Complaint as true and not the "allegations" of the Defendants to the contrary.[65]

Under Delaware law, the duty of care is the duty to act on an informed basis.[66]  The duty of care "requires that directors of a Delaware corporation both: (1) 'use that amount of care which ordinarily careful and prudent men would use in similar circumstances'; and (2) 'consider all material information

---

acquisition without conducting due diligence, without retaining experienced advisors, and after holding a single meeting at which management made a cursory presentation.").

[63]     Adv. D.I. 17 ¶¶ 63, 72, 81-83.

[64]     Adv. D.I. 19; Adv. D.I. 21, Exs. A-H; Adv. D.I. 29, 30.

[65]     See Emerald Capital Advisors Corp. v. Karma Automotive LLC (In re FAH Liquidation Corp.), 581 B.R. 98, 104 (Bankr. D. Del. 2017).

[66]     Burtch v. Huston (In re USDigital, Inc.), 443 B.R. 22, 41 (Bankr. D. Del. 2011).  See also Cede & Co., 634 A.2d at 361.

reasonably available.'"[67]  "Duty of care violations are actionable
only if the directors acted with gross negligence."[68]  Gross
negligence is "conduct that constitutes reckless indifference . .
. or actions that are without the bounds of reason."[69]  Gross
negligence generally requires that "officers, directors, and
managers fail to inform themselves fully and in a deliberate
manner."[70]

The Amended Complaint alleges, inter alia, that Schoen did
not gather enough information regarding the cost of equipment and
its maintenance before deciding to purchase foreign equipment
which proved costly to install, operate, and maintain.[71]  It
further alleges that Schoen never bothered to compare the prices
the Debtor was paying to market rates, which resulted in the
Debtor paying a substantial premium on supplies.[72]  The Amended
Complaint similarly alleges that the CFO Defendants failed to
inform themselves in the appropriate manner about the costs of the

---

[67]    Bridgeport, 388 B.R. at 568 (quoting Walt Disney I, 907 A.2d
at 749).

[68]    Walt Disney I, 907 A.2d at 750.  See also W.J. Bradley, 598
B.R. at 163; Fedders, 405 B.R. at 539.

[69]    McPadden v. Sidhu, 964 A.2d 1262, 1274 (Del. Ch. 2008)
(citation omitted).

[70]    W.J. Bradley, 598 B.R. at 163 (quoting Fedders, 405 B.R. at
539).

[71]    Adv. D.I. 17 ¶¶ 53, 80-84.

[72]    Id. ¶¶ 118-25.

expansion and the increased operational costs.[73]  It alleges that
the CFO Defendants failed to update budgets and report accurate
financial data to the BOD and Lenders, resulting in violation of
the Lenders' covenants and increased costs of debt.[74]  Finally, the
Amended Complaint alleges that the BOD Defendants failed to (a)
properly monitor the Debtor's management, (b) educate themselves
about the paper industry, (c) recognize the numerous
irregularities in the Debtor's financial reports and budgets, (d)
insist on the replacement of incompetent management, (e) object to
the extensions of the Debtor's credit facility which increased
costs, and (f) prohibit the Debtor from continuing to operate
while insolvent.[75]

The Court concludes, based on these allegations of the
Amended Complaint, that the Liquidating Trustee has pleaded
sufficient facts to state a claim against the Defendants for
breach of the fiduciary duty of care.  The Court also rejects the
Defendants' contention that the Amended Complaint "group" pleads
the breach of fiduciary duty claims.  The Amended Complaint
identifies dates, parties, and actions or inactions of the
Defendants, which are sufficient to put them on notice of the

---

[73]   Id. ¶¶ 54-55, 59-60, 80-83, 91-92.

[74]   Id. ¶¶ 54-55, 59-60, 80-84, 128-41.

[75]   Id. ¶¶ 3-6, 51, 63, 68, 74, 92, 101, 116-25, 129, 131-32,
157, 146-59, 174.

specific conduct that gives rise to the breach of fiduciary claims asserted against them.[76]

### 3. Duty of Loyalty

#### a. Self-interested Transaction

The Defendants argue that the Liquidating Trustee has failed to state a claim for a breach of the duty of loyalty against the BOD Defendants.  Typically, to state a claim for breach of the duty of loyalty, "plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."[77]

The Liquidating Trustee responds that the Amended Complaint does alleges that the BOD Defendants acted with self-interest because they received large compensation packages from the Debtor.[78]  The Defendants counter that the claim must fail because the Amended Complaint does not allege any causal link between the BOD Defendants' routine compensation and their decision-making.

The Court agrees with the Defendants.  The Amended Complaint does not allege that the BOD Defendants approved management's recommendations in order to receive compensation, it only alleges that they did so while receiving compensation.  "An allegation that a director received a large salary is not enough" without an

---

[76]    Id. ¶¶ 63, 72, 81–83.

[77]    Fedders, 405 B.R. at 540 (quoting Joyce v. Cuccia, No. CIV.A. 14953, 1997 WL 257448, at *5 (Del. Ch. May 14, 1997)).

[78]    Adv. D.I. 17 ¶¶ 4-7, 159, 187.

allegation that there is a causal link between the payment and the actions taken in violation of the defendant's fiduciary duty.[79] Therefore, the Court concludes that because the Amended Complaint does not link the directors' compensation to the conduct at issue, the Amended Complaint's allegation that the BOD Defendants received compensation does not alone establish a breach of their duty of loyalty.

> b.  Lack of Good Faith

The Liquidating Trustee argues, however, that a claim for breach of the duty of loyalty "is not limited to cases involving a financial or other cognizable fiduciary conflict of interest.  It also encompasses cases where the fiduciary fails to act in good faith."[80]  The Liquidating Trustee asserts that the Defendants violated their duty of good faith in this case by intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard for their duties.[81]  The Liquidating Trustee contends that there are specific allegations in the Amended Complaint that Schoen, the CFO Defendants, and the BOD Defendants

---

[79]   Nystrom v. Vuppuluri (In re Essar Steel Minnesota LLC), Adv. Proc. No. 17-50001, 2019 WL 2246712, at *7 (Bankr. D. Del. May 23, 2019).

[80]   Stone v. Ritter, 911 A.2d 362, 370 (Del. 2006).

[81]   Adv. D.I. 17 ¶ 166.  See Stone, 911 A.2d at 370 (holding that directors of a company may breach their duty of loyalty if they did not act in good faith by failing to consciously discharge a known fiduciary duty to act); Walt Disney II, 906 A.2d at 67 (same).

consciously disregarded their fiduciary duties in a multitude of ways.[82]

The Defendants counter that the allegations of the Amended Complaint are insufficient to state a claim of gross negligence, let alone meet the higher standard of establishing a claim for breach of the duty of good faith.[83]  The Defendants assert that the Liquidating Trustee relies on many conclusory and contradictory statements that are inadequate to support the allegations that the Defendants intentionally disregarded their fiduciary duties.

In particular, the BOD Defendants assert that the allegations

---

[82]  The Amended Complaint alleges that Schoen failed (i) to ensure that the CFO Defendants maintained accurate financial tracking of the costs of the Barnwell construction, (ii) to provide oversight of the costs and complications from installing complicated and costly foreign equipment, and (iii) to change how the Debtor "managed" the buildout when it became evident that it was over budget.  (Adv. D.I. 17 ¶¶ 59-60, 63, 68-69, 72).  The Amended Complaint also alleges that the CFO Defendants failed (i) to monitor and provide oversight for the planning and execution of the expansion, (ii) to address significant cost and time overruns in the expansion, (iii) to hire experienced advisors or otherwise inform themselves on issues critical to the expansion, (iv) to update and assure compliance with budgets for the expansion and operations, (v) to inform themselves about the current cost of raw materials and the mark up charged by the Debtor's broker, (vi) to monitor the Debtor's compliance with its credit agreement, which had to be amended nine times, and (vii) to keep accurate books and records for the company.  (Id. ¶¶ 37, 51, 55, 59-60, 63-65, 68-69, 72-73, 81-84, 91-94, 117-25, 130-43).  Finally, the Amended Complaint alleges that the BOD Defendants exhibited "a conscious, grossly negligent and/or reckless disregard for the best interests of the Debtor and its creditors" by failing to oversee and monitor all of the above activities of the Debtor's management.  (Id. ¶¶ 4-6, 58, 72, 132, 146-49, 152-55, 172-74.)

[83]  Stone, 911 A.2d at 369.

in the Amended Complaint actually show that the BOD consistently met, reviewed presentations, and did not ignore any illegal activity or regulatory noncompliance.[84]  This, they argue establishes that even if they made mistakes, they did not consciously disregard their duties.[85]  Thus, the BOD Defendants argue that the Amended Complaint's allegations fail to meet the standard for stating a claim for breach of the duty of good faith as to them.

The Liquidating Trustee disagrees.  It contends that the Amended Complaint alleges numerous instances where the BOD Defendants did more than simply make mistakes, they ignored their fiduciary obligations entirely.  For example, the Amended Complaint alleges that, even if they met regularly, the BOD Defendants did nothing more than rubber stamp management's

---

[84]    Adv. D.I. 17 ¶¶ 27-31, 37, 43-52, 156.

[85]    McElrath v. Kalanick, 224 A.3d 982, 993 (Del. 2020) (stating that "there is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties") (quoting Lyondell Chem. Co. v. Ryan, 970 A.2d 235, 243 (Del. 2009)).  See also Miller v. Anconnect, LLC (In re Our Alchemy, LLC), Adv. Proc. No. 18-50633 (KG), 2019 WL 4447541, at *8 (Bankr. D. Del. Sept. 16, 2019) ("If the business strategy results in deeper insolvency and ultimately fails to increase the company's value, it does not mean that a plaintiff can state claims against the directors based on the result.  This is [sic] simple business failure that does not give rise to breach of fiduciary duty claims.") (citing Official Comm. of Unsecured Creditors of Midway Games Inc. v. Nat'l Amusements Inc. (In re Midway Games Inc.), 428 B.R. 303, 315 (Bankr. D. Del. 2010)); In re Goldman Sachs Grp., Inc. S'holder Litig., No. CIV.A. 5215-VCG, 2011 WL 4826104, at *16 (Del. Ch. Oct. 12, 2011) (stating that a director's fiduciary duty does not require perfection or consideration of every conceivable alternative).

actions.[86]  Further, while the Debtor had a reporting system, the Amended Complaint alleges that the BOD Defendants failed to do anything when they realized the reports they received were erroneous.[87]  Thus, the Liquidating Trustee argues that the Amended Complaint sufficiently alleges a breach of the BOD Defendants' duty of good faith.[88]

To state a claim for violation of the duty to act in good faith, the plaintiff must allege "conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)."[89]  Pleading a violation of the duty of good faith requires a higher standard than a violation of the duty of care, namely that the conduct was not merely grossly negligent but "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[90]

---

[86]   Adv. D.I. 17 ¶¶ 4-6, 58, 72, 132, 146-49, 152-55, 172-74.

[87]   Id. ¶¶ 29, 53, 151-54.

[88]   Stone, 911 A.2d at 369-70 (holding that to state a claim for director oversight liability, a plaintiff must plead that "(a) the directors utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system of controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention.").

[89]   Id. at 369.

[90]   In re Chelsea Therapeutics Int'l Ltd. S'holders Litig., No. CV 9640-VCG, 2016 WL 3044721, at *7 (Del. Ch. May 20, 2016).  See also Stone, 911 A.2d at 369.

The Delaware Supreme Court has recognized three examples of conduct that establish a failure to act in good faith:

> A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.  There may be other examples of bad faith yet to be proven or alleged, but these three are the most salient.[91]

Thus, when "directors fail to act in the face of a known duty to act, thereby demonstrating a conscious disregard for their responsibilities, they breach their duty of loyalty by failing to discharge that fiduciary obligation in good faith."[92]

Looking at the conduct alleged by the Amended Complaint, the Court concludes that the Liquidating Trustee has adequately stated a claim that the Defendants breached their duty of good faith. The Amended Complaint contains numerous allegations that the Defendants failed to act in the face of a known duty to act, demonstrating a conscious disregard for their duties.[93]  The allegations in the Amended Complaint specifically allege that (i) Schoen failed to oversee and control the costs and complications of the buildout and expansion, (ii) the CFO Defendants failed to monitor the expansion and consistently prepared erroneous

---

[91]    _Walt Disney II_, 906 A.2d at 67.

[92]    _Stone_, 911 A.2d at 370.

[93]    _See Walt Disney II_, 906 A.2d at 67.

financial reports which they failed to correct, and (iii) the BOD Defendants did not properly oversee management or act when it became apparent that the financial reports were erroneous and the expansion was a disaster.[94]

For the forgoing reasons, the Court concludes that the Liquidating Trustee has stated a claim for breach of the fiduciary duties of care and loyalty.  Accordingly, the Court will deny the Motions to Dismiss Counts I and II of the Amended Complaint.[95]

C.   Aiding and Abetting Breach of Fiduciary Duties

In Count III, the Liquidating Trustee asserts claims of aiding and abetting breach of fiduciary duties against the BOD Defendants.

The BOD Defendants argue that, because the Amended Complaint fails to state a claim for breach of fiduciary duties, this count should also be dismissed.  In addition, the BOD Defendants argue that there are no facts in the Amended Complaint that support an inference that the BOD Defendants did not owe fiduciary duties to the Debtor.  Thus, the BOD Defendants contend that because they

---

[94]   Adv. D.I. 17 ¶¶ 4-6, 37, 51, 55, 58-60, 63, 68-69, 72-73, 81-84, 91-94, 130-43, 146-49, 152-55, 172, 174.

[95]   The Defendants also argue that they have an exculpation clause which relieves them of any responsibility.  The Court need not consider this argument because it is an affirmative defense which should not be considered at the motion to dismiss stage. See Friedman v. Wellspring Capital Mgmt., LLC (In re SportCo Holdings, Inc.), Adv. Proc. No. 20-50554 (JKS), 2021 WL 4823513, at *7 n.81 (Bankr. D. Del. Oct. 14, 2021); Guiliano v. Schnabel (In re DSI Renal Holdings, LLC), 574 B.R. 446, 471 (Bankr. D. Del. 2017).

are co-fiduciaries, there cannot be an aiding and abetting claim asserted against them under Delaware law.

The Liquidating Trustee argues that the Amended Complaint does state a claim against all of the Defendants for breach of fiduciary duty.  However, it contends that, if the Court concludes that the BOD Defendants did not breach their own fiduciary duties, the Amended Complaint nonetheless states sufficient facts to support a claim that they aided and abetted the breach of fiduciary duties by the remaining Defendants.  In support, the Liquidating Trustee states that the Amended Complaint alleges that the BOD Defendants had actual knowledge of the facts and circumstances alleged in support of the breach of fiduciary duty claims against the other Defendants and rendered substantial assistance to them.[96]  Therefore, the Liquidating Trustee asserts that the Amended Complaint does state a claim against the BOD Defendants for aiding and abetting the other Defendants' breaches of fiduciary duties.  The Liquidating Trustee argues that it is premature to dismiss the aiding and abetting claim at this stage because it is too early to determine the culpability of each Defendant.[97]

Stating "[a] valid claim for aiding and abetting a breach of

---

[96]    Adv. D.I. 17 ¶ 181.

[97]    W.J. Bradley, 598 B.R. at 174–75; Miller v. McCown De Leeuw & Co., Inc. (In re The Brown Schs.), 368 B.R. 394, 402–03 (Bankr. D. Del. 2007).

fiduciary duty requires the plaintiff to show that (1) a fiduciary relationship existed; (2) the fiduciary breached its duty; (3) a non-fiduciary defendant knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted actions of the fiduciary and the nonfiduciary."[98]

The Court agrees with the Liquidating Trustee.  As explained above, the Court concludes that the Liquidating Trustee has successfully stated claims for breach of fiduciary duties against the Officer Defendants and BOD Defendants in Counts I and II. However, if the Liquidating Trustee is unable to prove its allegations with respect to any BOD Defendant, the Court concludes that the Amended Complaint has nonetheless alleged enough facts to support its claims that the BOD Defendants knowingly participated in the breach of fiduciary duties by the other Defendants.[99] Accordingly, the Court will deny the Motions to Dismiss Count III.

---

[98]    SportCo, 2021 WL 4823513, at *12 (citing Fedders, 405 B.R. at 543-44).

[99]    Adv. D.I. 17 ¶¶ 4-6, 60-62, 70-74, 92-94, 129, 132, 134-37, 139-49, 152-57, 167, 172-74.  See W.J. Bradley, 598 B.R. at 174-75 (holding that at the motion to dismiss stage, it is too early to determine the precise boundaries of each defendant's fiduciary duties, but directors shielded from liability by an exculpation clause could still be held liable for aiding and abetting a breach of a fiduciary duty by another defendant); The Brown Schs., 368 B.R. at 402-03 ("While a corporate director owes the corporation fiduciary duties, in some instances those duties may be limited (by corporate charter or statute).  Thus, the Court may find that a director had no fiduciary duty but aided and abetted a party that did.").

D.    <u>Fraudulent Transfers</u>

The Defendants move to dismiss Count IV of the Liquidating Trustee's Amended Complaint which alleges claims for avoidance of constructively fraudulent transfers (namely, the compensation and benefits paid to the Defendants) under state law and the Bankruptcy Code.

1.    <u>Insolvent</u>

The Defendants preliminarily contend that the Amended Complaint fails to allege any facts supporting a reasonable inference that the Debtor was insolvent at the time of the transfers.  The Liquidating Trustee responds that the Amended Complaint contains numerous factual allegations sufficient to establish that the Debtor was insolvent.[100]

The Court agrees with the Defendants that to state a claim to avoid a constructively fraudulent transfer under state law or the Code,[101] the plaintiff must allege, inter alia, facts showing that

---

[100]    Adv. D.I. 17 ¶¶ 60-62, 68, 70-74, 92-94, 129, 134-37, 139-45, 156-59, 167, 174.

[101]    11 U.S.C. §§ 544 & 548; Del. C. §§ 1302 – 1306.  The relevant Delaware's Uniform Fraudulent Transfer Act and applicable Bankruptcy Code provisions mirror each other, and "Delaware Courts have interpreted and applied them uniformly." <u>Crystallex Int'l Corp. v. Petróleos De Venezuela, S.A.</u>, 879 F.3d 79, 86 (3d Cir. 2018) (citations omitted).  <u>See also</u> <u>In re PHP Healthcare Corp.</u>, 128 F. App'x 839, 847 (3d Cir. 2005) ("We need not discuss the provisions of the Delaware Fraudulent Transfer Act . . . because they are substantially the same as the relevant parts of the Bankruptcy Code.").

the debtor was insolvent at the time of the transfer.[102]
While the allegations of the Amended Complaint with respect to the
solvency of the Debtor are conclusory,[103] the Court concludes that
the Amended Complaint contains detailed allegations of the
significant continuing losses suffered by the Debtor during the
expansion efforts.[104]  Those continuing losses resulted in at least
nine breaches of the Debtor's agreement with its Lenders,
requiring that the Debtor agree to more onerous terms to avoid a
default.[105]  The Court concludes that these allegations are
sufficient to state a plausible claim that the Debtor (1) was
insolvent at the time of the transfers or became insolvent as a
result thereof, (2) was engaged, or was about to engage in
business or a transaction, for which the  remaining assets of the
Debtor was unreasonably small in relation to the business or
transaction, or (3) intended to incur, or believed or reasonably
should have believed that it would incur, debts beyond its ability
to pay as they came due.[106]

      2.   <u>Reasonably Equivalent Value</u>

    The Defendants also argue that the Amended Complaint fails to

---

[102]   <u>SportCo</u>, 2021 WL 4823513, at *14.

[103]   Adv. D.I. 17 ¶¶ 188-89.

[104]   <u>Id.</u> ¶¶ 60-62, 68, 70-74, 92-94, 143-45, 155-59.

[105]   <u>Id.</u> ¶¶ 137, 139-45, 158.

[106]   11 U.S.C. § 548(a)(1)(B).

allege facts showing that the Debtor did not receive reasonably equivalent value in exchange for their compensation.  They note that the Amended Complaint fails to allege that the amounts paid to the Defendants were over-market or otherwise excessive.  They also contend that there are no allegations that the Defendants did not render the services for which they were paid.[107]

The Liquidating Trustee argues that the Debtor received less than reasonably equivalent value in exchange for the compensation and benefits paid to the Defendants because they breached their fiduciary duties as detailed in the Amended Complaint.[108]

Neither the Delaware statute nor the Bankruptcy Code defines "reasonably equivalent value."  However, the Third Circuit has held that courts should define the scope and meaning of the term by conducting a totality of the circumstances analysis.[109]  The Court explained that this analysis consists of three factors: "(1)

---

[107]    Even when the activities of officers and directors are ultimately unsuccessful in saving the company, it "does not detract from the work undertaken by Defendants for which they were compensated."  EiserAmper LLP v. Morgan (In re SRC Liquidation LLC), 581 B.R. 78, 97–98 (D. Del. 2017) (holding that complaint failed to sufficiently allege that the company received less than reasonably equivalent value for the bonuses it paid).  See also Midway Games, 428 B.R. at 323 (concluding that plaintiff failed to state a claim for avoidance of fees paid to its directors as fraudulent transfers where it failed to allege that the fees were excessive or sufficient facts to support a claim for breaching their fiduciary duties).

[108]    Adv. D.I. 17 ¶¶ 145, 159, 187–89.

[109]    Midway Games, 428 B.R. at 323 (citing In re R.M.L., Inc., 92 F.3d 139, 153 (3d Cir. 1996)).

whether the transaction was at arm's length, (2) whether the
transferee acted in good faith, and (3) the degree of difference
between the fair market value of the assets transferred and the
price paid.".[110]

The Third Circuit has held that, even where a transaction is
at arm's length and the transferee acted in good faith, a transfer
may nonetheless be avoidable if the actual value of what was given
in exchange was not equivalent to the value of the transfer.[111]
Similarly, the Court will be required to determine in this case
whether the services provided by the Defendants were worth the
compensation paid to them.  The allegations of the Amended
Complaint that the Defendants failed to act in good faith or to
perform their essential fiduciary duties in conducting and
monitoring the Debtor's operations and expansion do raise a
question as to the value of the services the Defendants provided
to the Debtor.  Therefore, the Court concludes that the Amended
Complaint does contain factual allegations sufficient, if true, to
establish that the Debtor received less than reasonably equivalent
value for the compensation paid to the Defendants.

3.   Identification of Transfers

The Defendants finally contend, however, that the Amended

---

[110]   Id.

[111]   R.M.L., 92 F.3d at 154 ("Thus, essential to a proper
application of the totality of the circumstances test in this
case is a comparison between the value that was conferred and
fees Intershoe paid.").

Complaint is deficient because it fails to identify the specific transfers or the total amounts sought to be avoided.

The Court agrees with the Defendants on this point.  In order "to satisfy <u>Twombly</u> and <u>Iqbal</u>, the Trustee would have to provide specific facts as to which [defendant] received which transfer."[112] The Liquidating Trustee must put the individual Defendants on notice by pleading with particularity the details of the alleged transfers it seeks to avoid: namely the transfer date, the amount, the name of the transferor, and the name of the transferee.[113]

In this case, the Amended Complaint provides only a list of each Defendant's name and the time period during which he/she received compensation and benefits.[114]  Nowhere in the Amended Complaint does the Liquidating Trustee identify the specific amounts or dates of the transfers.  Consequently, the Court concludes that the Amended Complaint fails to provide sufficient facts to put the Defendants on notice of what fraudulent transfers are sought to be avoided.[115]

---

[112]   <u>Beskrone v. OpenGate Capital Grp., LLC, (In re PennySaver USA Publishing, LLC)</u>, 602 B.R. 256, 268 (Bankr. D. Del. 2019).

[113]   <u>DBSI</u>, 445 B.R. at 355.  <u>See also</u> <u>Giuliano v. U.S. Nursing Corp. (In re Lexington Healthcare Grp., Inc.)</u>, 339 B.R. 570, 575 (Bankr. D. Del. 2006) (holding that a chart summarizing the transfers without specific amounts or other details about the alleged transfers was insufficient to support the trustee's allegations of fraudulent transfers).  <u>See also</u> <u>Pardo v. Gonzaba (In re APF Co.)</u>, 308 B.R. 183, 188 (Bankr. D. Del. 2004).

[114]   Adv. D.I. 17 ¶ 187.

[115]   <u>See, e.g.</u>, <u>PennySaver</u>, 602 B.R. at 270.

Therefore, the Court finds that the Amended Complaint fails to state a claim for avoidance of the compensation and benefits paid to the Defendants as fraudulent transfers. As a result, the Court will dismiss Count IV.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Motions to Dismiss will be granted with respect to Count IV and denied with respect to Counts I-III.

An appropriate Order is attached.


Dated: March 14, 2022          BY THE COURT:

                               Mary F. Walrath
                               United States Bankruptcy Judge

37